Timothy Clark Dudley (13053)
**WASATCH ADVOCATES LLC**
4525 S Wasatch Blvd Ste 300
Salt Lake City UT 84124
Tel (801) 386 7090
Fax (801) 662 0082
timothy@slclawfirm.com
*Attorney for Plaintiff*

FILED
U.S. DISTRICT COURT

2010 DEC 13  P 4: 19

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| AS AMERICAN AS DOUGHNUTS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL J.T. PATTON, d.b.a <br> SPUDOS DONUTS & MORE; <br> ERNEST MARKISICH; <br> ROGER GREAR, SR.; and <br> CHP BLENDERS, INC., <br><br> Defendants. | **AMENDED VERIFIED COMPLAINT** <br><br> Case No 2:10CV01138 <br><br> Judge |

Plaintiff, AS AMERICAN AS DOUGHNUTS, INC., files this Verified Complaint against Defendants: Michael J.T. Patton ("Patton" or "Spudos") doing business as Spudos Donuts & More ("Spudos" or "Patton"); Ernest Markisich ("Markisich"); Roger Grear, Sr. ("Grear"); and CHP Blenders, Inc. ("CHP" or "CHP Blenders") as follows.

## PARTIES

1. As American As Doughnuts ("As American") is incorporated in the state of Utah with its principle place of business at 2001 Warm Springs Road, Salt Lake City, UT 84116.

2. On information and belief, Defendant Michael Patton resides in the state of Illinois at ████████ ████████████ ████████████, doing business as Spudos Donuts & More, an Illinois company located at █████████████████████████████████.

3. On information and belief, Defendant Ernest Markisich resides in the state of Utah at ██████ ████████████ ████████████.

4. On information and belief, Defendant CHP Blenders, Inc. is incorporated in the state of Missouri with its principle place of business at ███████████████████████████████ ███████.

5. On information and belief, Defendant Roger Grear, Sr. resides in ███████████████████ ███████████████████████████████.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the actions against Mr. Patton and Spudos Donuts & More pursuant to the Court's: (i) subject matter jurisdiction (15 U.S.C. § 1121, 17 U.S.C. § 501 *et seq.*, and 28 U.S.C. §§ 1331, 1338), (ii) pendant jurisdiction, and (iii) personal jurisdiction by Mr. Patton's consent in contract (*see* Exhibit E, ¶ 22), by selling, delivering, or producing goods in the District under U.C.A. 78B-3-205 (*see* Exhibit A), and thus by his systematic continuous substantial contacts with, and purposeful availment of the benefits of, the jurisdiction in which this District is located (*see* Exhibit E, ¶ 22).

7. This Court has jurisdiction over the actions against Mr. Grear pursuant to its subject matter jurisdiction (15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338) and pendant jurisdiction.

8. This Court has jurisdiction over the actions against Mr. Markisich pursuant to its personal jurisdiction by Mr. Markisich's presence in the state in which this District is located and by his contracting to provide goods or services under U.C.A. 78B-3-205 (*see* Exhibit D, ¶ ¶ 3-5).

9. This Court has jurisdiction over the actions against CHP Blenders, Inc. pursuant to its personal jurisdiction by CHP's systematic and continuous minimum contacts with, and purposeful availment of the benefits of, the jurisdiction in which this District is located and by its contracting to provide goods or services under U.C.A. 78B-3-205 (Exhibits B and C).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3).

## CAUSES OF ACTION

10. As American alleges the following causes of actions against Defendants: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of the implied covenant of good faith and fair dealing;

*Verified Complaint*

(4) violation of the Utah Trade Secret Act; (5) copyright infringement; (6) trademark infringement; (7) unfair competition; (8) intentional interference with contractual relations and prospective advantage; (9) conversion of trade secrets; and (10) unjust enrichment.

## GENERAL ALLEGATIONS

11. As American is the latest effort of Utah resident Douglas E. Bagley to provide some security for his family and himself despite a lifetime of challenges: the death of his parents in his youth, honorable military service, becoming a widower as a young father, raising his three young children alone, and adding seven more children after remarriage.   To survive these difficulties, the only recourse that Mr. Bagley has had is to attempt a few of his own small-businesses--for example, As American As Doughnuts, Inc.   Now Mr. Bagley has had to turn more and more for security to As American as his other enterprises have been especially susceptible to the recent housing crises, recession, and their aftermath.

12. Having to resort to supplemental business enterprises in order to secure his family's welfare, Mr. Bagley began to acquire proprietary rights to bakery mixes and other goods, and he also began to develop unique methods and other trade secrets for his proprietary items.   To do so, he formed As American, a retail bakery promotion company, selling and distributing these proprietary goods and rights to retailers, consumers, or both.

13. As part of its overall business model, As American also offers to its clients related consulting and training services for assisting them in the development, maintenance, and management of retail bakery facilities, which use the proprietary mixes for making popular doughnuts and other food confections.

14. Over one if not a few decades, As American spent considerable time, effort, and money to develop and/or acquire its proprietary goods and services.   For example, As American built up its confidential information and processes by significant investments in *inter alia*: painstaking research; extensive trial and error methods or experimentation; advanced education or training; marketing analysis; intellectual property acquisition; client development; and expert consultation services.

15. As American has held all of its proprietary rights in strict confidence.

16. In or about December 2008, As American fortuitously invested in an extremely rare and valuable ingredient book that included many exclusive recipes unavailable to the public from Spudnuts International, Inc. through its Executive Vice President and General Manager, Mr. Will Bellar.  The recipes are for the original "Spudnut" doughnut.  (Exhibit D, ¶ 2.)   On information and belief from Mr. Bellar, only two other such books ever existed.  (Exhibit D, ¶ 2.)

17. In the fall of 2008, Markisich contracted with As American in order to assist it in making, promoting, and selling As American's popular confections at the delicatessen store of Markisich's father-in-law in Utah.

18. Prior to meeting with As American, Markisich lacked significant knowledge of the baking industry, especially in the area of As American's proprietary goods and services.  Thus, As American trained Markisich in the proper development and techniques.

19. Shortly after As American trained Markisich on preparing As American's mixes, Markisich departed from his father-in-law's business and proposed a business arrangement with As American which they began together in or about January 2009.  (Exhibit D, ¶ 3-5)

20. The arrangement included an oral contract in which As American agreed to provide training and initial supplemental expenditures to assist Markisich in gaining the necessary skills to fulfill his contractual obligations to As American.  *Id.*

21. As American also agreed to allow Mr. Markisich to freely charge, and retain all monies collected from, As American's clients who received Mr. Markisich's training services as As American's clients.  *Id.*

22. In return, Mr. Markisich agreed to, *inter alia*, solicit and manage As American's client training services, develop new products according to As American's business plan, and continually promote As American's proprietary mixes to existing and potential clients.  *Id.*

23. One such client, Patton, on or about March 1, 2009, entered into a Supplier Agreement with As American in which As American agreed to supply Patton with its "proprietary doughnut mixes[,]

equipment designs and methods for preparing doughnuts from these mixes" for at least three years. (Exhibit E, ¶ A.)

24. As American also agreed to "assist [Patton] in designing his cooking facilities for proper preparation of doughnuts from its mixes…." (*Id.* at ¶ D.)

25. As American then granted Patton an exclusivity-arrangement covering a 100-mile radius within which Patton had the "exclusive rights to use, sell, and make doughnuts with doughnut mix supplied" by As American. (*Id.* at ¶ 2.) Thus, As American covenanted not to directly compete with Patton.

26. In exchange for the exclusivity agreement, Patton paid As American $6,000.00. (See Exhibit E, ¶ 2, and Exhibit F).

27. Patton further agreed, *inter alia*, to an exclusive buying arrangement. Patton's obligations included "purchas[ing] from [As American], and from no other supplier, any and all doughnut mixes which it uses to make doughnuts sold by [Patton] within its exclusive sales territory." (Exhibit E, ¶ 1).

28. The contract terms prohibited Patton from "sell[ing] any doughnuts [] not made using the doughnut mix provided by [As American]." (Exhibit E, ¶ 1).

29. To make and ship its mixes to Patton, on or about April 1, 2009, As American engaged the services of CHP to blend As American's mixes in accordance with at least one of the exclusive doughnut ingredients found in the above Spudnut proprietary book.

30. As part of the Supply Agreement, CHP shipped the finished products in As American's proprietary packaging with copyrighted designs and labels either directly to As American for redistribution or, as in the case of Patton, directly to the client.

31. In order to protect the secrecy of As American's proprietary mixes, As American had engaged CHP in a Non-Disclosure Agreement ("NDA," Exhibit C), which obligated CHP to "maintain certain proprietary information… in confidence to the same extent that CHP Blenders protects its own proprietary information." (Exhibit C, ¶ 1.)

**FIRST CAUSE OF ACTION**

***Breach of Contract against All Defendants***

32. As American incorporates by reference and reasserts the allegations contained in Paragraphs 1 through 31.

33. As American alleges breach of contract against Patton for breach of the Supplier Agreement. (Exhibit E.)

34. Under the Supplier Agreement, As American (through CHP) supplied Patton with 8,000 pounds of proprietary doughnut mix as part of the for good consideration. (Exhibits E and F.)

35. As American also sent its representative, Markisich, to assist Patton in setting up his cooking facilities (i.e., Spudos Donuts & More). (Exhibit E.)

36. Although As American fulfilled its obligations under the Supplier Agreement, Patton has since refused to purchase any mix from As American.  Patton, however, continues to make, use, and sell doughnuts and doughnut mixes through the Spudo's store, website, and other means.   (*See* www.spudosdonuts.com/products/products.asp?category=1, offering mixes online.)   On information and belief obtained from Markisich and CHP, Patton now buys mixes (other than As American's) directly from CHP. Thus, Patton directly violates, *inter alia*, the exclusive buying terms of the Supplier Agreement.  (Exhibit E, ¶ 2.)

37.Thus, Patton has also begun directly and openly competing with As American outside of his exclusive 100-mile radius.

38. As American alleges a breach of contract claim against Markisich for breach of their oral agreement.

39. As American fulfilled its obligations under the agreement. As American paid Markisich $5,000 to cover some of his personal expenses during his training period (Exhibit E, Copy of One Check for $2,000.00 and Email from Markisich.)  As American also arranged for Markisich to attend classes on proper mixing and baking techniques with various experts in the field.

40. Further, As American sent Markisich to many clients' place of business (including Spudo's,

*Verified Complaint*
Page **6** of **22**

Patton's place of business) to facilitate their operation of a retail bakery store in accordance with guidelines from As American's proprietary information.

41. Although Markisich continually assured As American of his commitment to meet his obligations of training, product development, and promotion of As American's goods, while under contract with As American, Markisich has been working for Patton in making, using, and selling products directly from, or in direct competition with, As American. Thus, Markisich has violated, *inter alia*, his contractual duties and obligations to As American. (Exhibit D, Affidavit of Douglas E. Bagley Concerning Ernest Markisich; Emails Concerning Past Issues with Mike Patton and Ernest Markisich; and Emails Documenting Existence and Nature of Professional Relationship Between Douglas E. Bagley and Ernest Markisich.) As American incorporates Exhibit D and its allegations by reference into this Complaint.

42. As American alleges breach of contract against Defendant CHP Blenders. (Exhibit C.)

43. As noted above, the NDA prohibited CHP from disclosing "any information to any third party without written consent from [As American]." (Exhibit C.)

44. Notwithstanding this provision, CHP sent the 8,000-pound shipment of proprietary mix to Mr. Patton with a listing of each and every ingredient in the mix, in order of descending proportionality including the specific name of a crucial ingredient which As American keeps in strict confidence as a trade secret. (*See* Exhibit H, Affidavit of Douglas E. Bagley Concerning CHP Blenders and Related Email Between CHP Blenders and Douglas E. Bagley.)

45. As American never consented to such disclosure by CHP (either verbally or in writing) and immediately notified CHP of its violation of the NDA. Notwithstanding CHP's promise in the future to modify the listing of some of the ingredients to "spices" without disclosing the exact names, CHP violated the terms of their contractual agreement, and, thus, disclosed and injured one of As American's key proprietary rights and economic investments.

46. Thus, As American is entitled to damages caused by Patton, Markisich, CHP, or all of them, in an amount to be shown at trial, and to attorney fees pursuant to the Supplier Agreement. (Exhibit E, ¶

17.)

## SECOND CAUSE OF ACTION

### *Breach of Fiduciary Duty against Markisich*

47. As American incorporates by reference and reasserts the allegations contained in Paragraphs 1 through 46.

48. Markisich became an agent of As American itself when As American entrusted him with significant authority and control pursuant to the contract above to assist As American in the various sales and developments of As American's products, business model, and business relations including potential and actual clients.

49. Mr. Markisich also became an agent to any partnership or joint-venture with As American if at any time he was a partner or joint-venturer with As American.

50. For example, As American entrusted Markisich with the authority and control to represent As American to many businesses and parties across the country, to offer them As American's products and services, and to train them in As American's confidential information and techniques.  (Exhibit I, Emails Documenting Agency Relationship Between Douglas E. Bagley and Ernest Markisich and Exhibit D.)

51. As a result of this principal-agent relationship, Markisich owed a fiduciary duty to As American itself, to the partnership or joint-venture with As American, or to both by the contract demonstrated above.  If Markisich owed a fiduciary duty to any joint-venture or partnership with As American, then he also owed such a duty to his co-venturer or partner, which would have been As American.

52. These duties included a fiduciary duty of loyalty, obedience to reasonable directions, and reasonable care under any given circumstances, prohibition against secret profits, and the duty to disclose relevant information such as: potential clients, prospective economic advantages, and attempts or threats to injure the principal by third parties such as Patton.

53. Markisich breached his fiduciary duties to As American when he compromised As American's confidential information and business opportunities of which he learned only through his professional

relationship with As American.  (*See* Exhibit D, Affidavit of examples of specific breaches.)  By doing

so, Markisich breached his fiduciary duty of loyalty to apply all of his energy and influence to any

matter under his contract with As American and to apply all of the benefits that arose, either directly or

indirectly, within the scope of his agency relationship with As American.  By doing so, on information

and relief, Markisich gained secret profits, from Patton if not others as well.  (Exhibit D.)

54. These benefits would not have presented themselves to Markisich "but for" his agency

relationship with As American.

55. Thus, As American is entitled to any damages caused by Markisich's breach of fiduciary duty

including any secret profits that he obtained.

### THIRD CAUSE OF ACTION

*Breach of the Covenant of Good Faith and Fair Dealing against Patton and Markisich*

56. As American incorporates by reference and reasserts the allegations contained in

Paragraphs 1 through 55.

57. The implied covenant of good faith and fair dealing inheres in all contracts in Utah, including

the above Supplier Agreement and any contract between As American and Markisich.

58. Patton intentionally and purposefully acted to destroy or injure As American's rights to the

fruits of, and acted inconsistently with the common purpose and justified expectations of As American

in, the Supplier Agreement when he failed to perform his obligations under the Agreement as alleged

above. (*See* Exhibits E and F.)

59. As American's rights under the Agreement comprise the terms of the Agreement—that, *inter*

*alia*, Patton would not only purchase mixes from As American, but, more importantly, only from As

American.  That is, As American's rights under the contract included the right to significant fruits such

as dominant if not exclusive presence and awareness of As American's proprietary assets in the

market which the contract designated.   These rights were the common purpose and justified

expectations of As American.

60. Markisich intentionally and purposefully acted to destroy or injure As American's rights to the

fruits of, and acted inconsistently with the common purpose and justified expectations of As American in, his contract with As American when he compromised As American's proprietary information and business opportunities. (*See* Exhibit D.)

61. As American's rights under its contract with Markisich were, *inter alia*, that he would: offer, execute, and oversee As American's client training services; develop new products according to As American's business plan; continually promote As American's proprietary mixes to existing and potential clients; and reserve to As American (or to the joint-venture or partnership, if any, with As American) all opportunities for sales and business development that arose within the scope of his work for As American. (Exhibits D and H.)

62. Thus, both Patton and Markisich breached their inherent covenants of good faith and fair dealing with As American.

63. Therefore, As American is entitled not only to damages caused by all of Patton's and Markisich's breaches above but also punitive damages because of their bad faith and unfair dealings.

## FOURTH CAUSE OF ACTION

### *Violation of Utah Uniform Trade Secrets Act against Patton, Markisich, and CHP*

64. As American incorporates by reference and reasserts the allegations contained in Paragraphs 1 through 63.

65. Defendants have engaged in misappropriations of As American's trade secrets in violation of Utah Code Ann. § 13-24-1, et seq., in that they have either improperly breached duties to maintain the secrecy of As American's trade secrets, wrongfully acquired As American's trade secrets, or both.

66. As American's trade secrets include formulae, methods, techniques,  and processes which: As American has acquired or developed; As American has subjected to efforts that are reasonable under the circumstances to maintain their secrecy; derive independent economic value, actually and potentially, from not being generally known to, and not readily ascertainable by the proper means of, other persons who can obtain economic value from their disclosure or use; and pertain to secret recipes, preparation or cooking techniques and methods, and business measures such as models

and strategies for sales, product development, and business development.

67. CHP disclosed one of As American's trade secrets when it listed all of the ingredients by name from at least one of As American's highly proprietary recipes on the labeling of a package shipped to Patton.  (Exhibits C and H.)

68. CHP did not possess express or implied consent from As American to disclose this trade secret.

69. Instead, CHP knew that it was acquiring knowledge of this trade secret only under circumstances giving rise to a duty to maintain its secrecy, a duty that it expressly undertook in its NDA with As American.  (Exhibit C.)

70. CHP now blends a mix for Patton the secret proprietary recipe for which he directly or indirectly acquired almost certainly by CHP's disclosure of As American's trade secret above.  (Exhibit H.)

71. Patton has acquired trade secrets belonging to As American by means that he knew or had reason to know were improper, specifically by offering Markisich (who he met only because As American sent Markisich to Patton as As American's agent under the Agreement) incentives to divulge the trade secrets which Markisich had acquired only by his relationship with As American.  (Exhibit D.)  As a result, the mix recipe that Patton sells contains the exact same ingredients and possesses the exact same nutritional values of at least one of As American's key mix recipes.  (Exhibit J.)

72. Markisich has disclosed trade secrets to Patton knowing that he obtained those trade secrets under circumstances giving rise to a duty to maintain their secrecy, namely circumstances of, *inter alia*, an agency relationship with As American.   (Exhibit F.)   As a result, Patton not only markets, claims, and sells one of As American's proprietary recipes as his own, but also has established an entire business model identical to As American's operation of selling proprietary mixes (if not licensing related rights to retailers) with names, products, packaging, and branding or labeling identical or confusingly similar to As American's.

73. As American is entitled to recover from all Defendants the actual amount of damages sustained by As American or a reasonable royalty pursuant to Utah Code Ann. § 13-24-4 *et seq.*, and injunctive relief, pursuant to Utah Code Ann. § 13-24-3.

74. As American is also entitled to recover its attorney fees from Patton if not Markisich as well ,pursuant to Utah Code Ann. § 13-24-5 because of the willful and malicious nature of their misappropriation of at least one of As American's trade secrets.

**FIFTH CAUSE OF ACTION**

***Copyright Infringement against Patton, Markisich, and/or CHP***

75. As American incorporates by reference the allegations contained in Paragraphs 1 through 74 above and reasserts them.

76. As American has expended over $10,000.00 in designing unique packaging under a variety of its trademarks, including registered trademarks "Sbuddies," (Reg. No. 2,509,675 registered November 20, 2001) and "Sbuddies the Great Taste is Back," (Reg. No. 3,303,379 registered October 2, 2007) for marketing and selling its pre-packaged mixes. (Exhibit J).

77. This packaging is distinctly marked with a copyright notice listing its ingredients, nutritional values, and icing recipes. (Exhibit J.)

78. Since As American created its copyrighted packaging and trade dress, As American has been the sole proprietor of all rights, title, and interest in and to the copyrights.

79. Patton, Markisich, CHP, or all of them, have willfully infringed and are continuing to infringe the copyrights of As American's unique packaging by duplicating, producing, marketing, and selling the copies of As American's copyrighted recipes; by publishing a confusingly similar "Spudo's" trademark to their business relations and the public; by causing the packaging to be duplicated, produced, manufactured, distributed, marketed, sold; or all of the above. (Exhibit J.)

80. The duplications of As American's copyrighted recipes and ingredients listings, made or caused to be made by Defendants, or any one of them, are identical or substantially similar to the As American's copyrighted recipes and labels or substantial portions of them, including the three icing

recipes that are listed on As American's packaging.  As American alleges on information and belief that Defendants, or any one of them, have also made or caused derivatives of the duplicated As American's recipes and packaging to be manufactured, marketed, distributed and sold to distributors, wholesalers and the public.  (Exhibit J.)

81. The direct, willful, and wanton acts of copyright infringement by the Defendants have caused and will continue to cause irreparable injury and damages to As American until such conduct is enjoined.

82. As American has no adequate remedy at law with respect to the copyright infringement (along with the above and below violations of his proprietary rights) by Defendants.

83. As American seeks injunctive relief, and seeks damages for the copyright infringement by the Defendants in an amount to be shown at trial, as well as reasonable attorney fees.

84. As American also seeks an award of punitive damages for the willful copyright infringement by Defendants.

### SIXTH CAUSE OF ACTION

#### *Trademark Infringement against Patton, Grear, or Both*

85. As American incorporates by reference and reasserts the allegations contained in Paragraphs 1 through 84 above.

86. As American possesses a registered trademark for the name "Spuddies" and "Spuddies The Great Taste is Back" respectively.  (Exhibit J.)

87. Patton uses the trademarked name "Spudos" and "The Taste We All Remember" for his business which are, independently and collectively, likely to cause confusion, mistake, and deception concerning not only Patton's and Spudo's affiliation, connection, or association with Spuddies and As American but more importantly concerning the origin, sponsorship, or approval of Patton's and Spudo's products with As American's proprietary rights such as its original recipes for Spudnuts.  15 U.S.C. § 1125(a)(1)(A).

88. The likely confusion, mistake, and deception that Patton's and Spudo's above acts have

produced will irreparably harm As American and its proprietary rights including these two registered trademarks. They also allow Patton and Spudo's to profit off of As American's trademarks which retailers and consumers associate with the highly unique proprietary right that As American possesses in its original recipes for the Spudnut doughnut.

89. Confusion, mistake, and deception between the two sets of above marks are likely, first, because the marks are substantially similar phonetically and in meaning. "Spuddies" and "Spudo's" are almost identical phonetically, and "The Great Taste is Back" and "The Taste We All Remember" are substantially similar if not in phonetics then in diction. Second, the meaning of the first set of marks is the same in that they both refer not only to a colloquial name for a potato--that is, a spud-- but also in that both are attempting to refer to the original Spudnut doughnut. The meaning of the second second set of marks is the same in that they both try to hearken back to the old-fashioned original potato-based doughnut, the Spudnut, appealing to the people who will remember it from decades ago. Third, the goods and services offered under the two sets of marks are almost identical--not merely doughnuts but *potato-based* doughnuts and mixes. Fourth, As American's marks not only predate Patton's by several years but they have been used and developed much more often and in many more places including online, at a store called "Spuddies," and throughout the country by traditional marketing efforts. Fifth, given the near copy between the two sets of marks, Patton's intent is fairly obvious: to make money off of substantially the same products as As American by using marks that will be associated with the aspects of As American's goods and services that distinguish As American as uniquely appealing to retailers and consumers. Sixth, As American has taken many expensive measures to expand its product lines under these marks, and Patton is doing the same at least through his website as well as attempting to keep other retailers across the country from using the name "Spudnuts." Seventh, when retailers and consumers seeks products such as those from Spuddies and Spudo's, they will look to the internet and word of mouth, and in those "market places" Spuddies and Spudo's will be not only in the same aisle but on the same shelf most likely right next to each other.

90. Grear has also infringed the two above trademarks of As American by negligently, recklessly, or knowingly causing or allowing cease-and-desist letters to be sent (through Patton) to actual or potential purchasers of As American's goods and services on the false premise that he possesses the trademark registration for the name "Spudnuts" as applied to baked-goods products when the registration to which he refers is only for the name "Spudnuts" as applied to stores.  Exhibit K (Cease and Desist Letter from Patton's Attorneys) and Exhibit L (Emails between As American and Clients).

91. Thus, Grear is making or causing to be made false or misleading descriptions or representations of fact which are likely to cause confusion, mistake, or deception about the affiliation, connection, or association of As American's two trademarks above with the name "Spudnuts."  As American and its clients are not using the name "Spudnuts" for a baked-goods store which is the only stake that Grear's trademark can claim, yet his false or misleading representations cause As American's actual and potential clients to doubt the nature and thus worth of As American's trademarks.  15 U.S.C. § 1125(a)(1)(A).

92. Grear made the same misrepresentation to Patton shortly after Patton entered into the Supplier Agreement with As American, which appears to be one of the reasons Patton decided to breach the Supplier Agreement.   (*See* Exhibit K also, Two Letters Regarding Grear's Misrepresentation to Patton.)

93. This Court should determine and decree the right of Grear's registration or otherwise correct the register concerning the registration of Grear to reflect the fact that his trademark for the name "Spudnut" excludes those rights that he is asserting or is causing or allowing to be asserted against As American's actual or potential clients.  15 U.S.C. § 1119.

94. This Court should do the same regarding the confusingly similar trademarks of Patton above. 15 U.S.C. § 1119.

95. As American is entitled to injunctive relief against Grear or any of his licensees, agents, or other affiliates (including Patton) from asserting Grear's trademark beyond its officially and clearly limited scope.  15 U.S.C. § 1116.

96. As American is also entitled to profits and damages that Patton and Grear have obtained and caused, respectively and collectively, by their infringements of As American's trademarks.

97. Grear is also liable to As American for damages caused by his threats to sue Patton on his trademark for "Spudnuts" as a name for a bakery shop.

98. For the above reasons, the trademark infringements by Patton, Grear, or both violate U.C.A. 13-5a-102(4)(a)(B).  Thus, As American is entitled to actual damages to be shown at trial, costs and attorney fees, and punitive damages given the reckless if not intentional nature of their respective trademark infringements.  U.C.A. 13-5a-103(b).

### SEVENTH CAUSE OF ACTION

*Unfair Competition under Utah Common Law*

*against Patton, Markisich, or Both*

99. As American incorporates by reference and reasserts the allegations contained in Paragraphs 1 through 98 above.

100. Patton is unfairly competing with As American in that:

a. He is imitating and palming off As American's recipes as his own by either using the same recipes as As American or by claiming to do so when he publishes on his packaging the same ingredient list, nutritional values, and icing recipes as appear on As American's packaging (Exhibit J, Packaging Labels of Spuddies and Spudo's Doughnut Mixes);

b. He wrongfully acquired at least one of As American's trade secrets (from CHP, Markisich, or both) (Exhibits D and H);

c. He is profiting or attempting to profit from his and Grear's respective trademark infringements above (Exhibits K and L);

d. He is offering and selling doughnut mixes with the same pricing and quantity model as As American (Exhibit M); and

e. He is offering and selling a chocolate doughnut by using the same name that As American has been using for the same product, "Super Chocolate Doughnut." (Exhibit N.)

101. As a result, retailers and their consumers cannot help but be deceived and misled, or at least confused, concerning the source, approval, or sponsorship of the goods, services, and representations offered to the public and others by Spudo's and As American.

102. Thus, Patton also breaches U.C.A. § 13-11a-3 by passing off goods or services of As American as his own and by causing a substantial likelihood of confusion or misunderstanding to consumers when he duplicates the exact same key information on his own packaging as appears on As American's packaging.

103. Thus, Patton has profited from sources from which As American either would have profited or would have had a fair chance of profiting.

104. Markisich is unfairly competing with As American either by:

    a. Profiting from his disclosures to Patton of confidential and proprietary information that he received expressly or impliedly under a duty not to disclose without authority from As American or from his business relationship with As American;

    b. Profiting from business opportunities that arose thanks to his relationship with As American and that thus he was obligated to disclose to As American before utilizing but which he failed to disclose;

    c. Misrepresenting to potential clients of As American (whom he accessed or still accesses within the scope of his relationship with As American) that As American's *bona fide* secrets or proprietary information belong to him and are his to offer and provide; or

    d. By all of the above.  (Exhibit F.)

105. Thus, retailers and their consumers cannot help but be deceived and misled, or at least confused, concerning the source, approval, or sponsorship of the goods, services, and representations offered to the public and others by Markisich and As American.

106. Thus, Markisich has profited from sources from which As American either would have profited or As American would have had a fair chance of profiting.

107. Therefore, As American is entitled the profits obtained and damages caused by Patton's and

Markisich's unfair competition.

108. As American should also receive punitive damages given the willful if not malicious nature of the unfair competition by Patton, Markisich, or both.

### EIGHTH CAUSE OF ACTION

*Intentional Interference with*

*Contractual Relations and Prospective Advantage*

*against Patton, Markisich, Grear, or All of Them*

109. As American incorporates by reference and reasserts the allegations contained in Paragraphs 1 through 108 above.

110. Patton intentionally and improperly caused Markisich to divulge at least one trade secret of As American which Markisich did in violation of an existing contract with As American. (Exhibit D.)

111. Patton also intentionally and improperly caused Markisich to divert his loyalty (owed under Markisich's agreement with As American) from As American to himself and Spudo's—including by paying off Markisich's debts to enable Markisich to pay off all of his creditors—so that Markisich would use the information, connections, and opportunities that he obtained in his work for As American in order to benefit Patton and Spudo's instead. (Exhibit D, *e.g.* ¶ ¶ 9, 19.)

112. By diverting benefits from As American to Patton, Markisich has intentionally and improperly interfered with the prospective advantage that As American enjoyed toward Patton where Markisich has assisted him in purchasing mix from suppliers other than As American and in selling doughnuts not made from As American's mix. (*See* Exhibit E.)  After Patton engaged in this breaching conduct, Markisich continued to intentionally use As American's proprietary equipment designs and methods for preparing doughnuts, the mere knowledge let alone use of which were contingent on the Supplier Agreement. (Exhibit E, ¶ A.)  Each of these benefits that Markisich bestowed on Patton were rights belonging to As American for which Patton entered the Supplier Agreement with As American but which Patton was able to obtain outside the Agreement solely because of Markisich's intentional interference.

113. Markisich has also intentionally and improperly interfered with As American's prospective advantages toward potential buyers of As American's mixes. For example, Markisich was directed by As American to solicit certain Southern-California stores who would have been interested in As American's trans-fat free mixes for Spudnut-style doughnuts as California law prohibits them from selling doughnuts with trans fat. (Exhibit E, ¶ 14.) Markisich established contact with these stores, by his own admission, but reported to As American that they were not interested. *Id.* Yet Markisich himself later reported to As American that these same stores had begun purchasing Patton's trans-fat free mix (the confidential plan, recipe, or both which Patton had copied from As American) which they were able to do because they had come to know Markisich through As American when he solicited the stores pursuant to As American's direction before Patton was even selling mix. *Id.*

114. Patton has also intentionally and improperly interfered with As American's current contractual relations and prospective advantages by negligently, recklessly, or knowingly sending cease-and-desist letters to actual or potential purchasers of As American's offerings on the false premise that he, or someone other than As American, possesses the trademark registration for the name "Spudnuts" as applied to baked-goods <u>products</u> when the registration to which he refers is only for the name "Spudnuts" as applied to <u>stores</u>. The letter was sent to a shop that calls one of its products "Spudnut" for which As American supplies the mix. Because Patton is negligently, recklessly, or knowingly sending these letters, As American is having to offer its current and prospective buyers legal services from its own attorney to expose Patton's false allegations. These current or potential buyers are deterred from purchasing mix from As American when Patton raises doubts about As American's, and their own, rights to use the name "Spudnuts," not for their stores, but for their products. *See* Exhibit K (Cease and Desist Letter from Patton's Attorneys) and Exhibit L (Emails between As American and Clients).

115. Also, As American brought a trademark suit against Grear's trademark because his registration for the name "Spudnuts" only applies to stores, but he is attempting to enforce it against others who use the name only for products. (*See* Exhibit K.) Upon information and belief from

Markisich, Patton is funding the defense of Grear, only further interfering intentionally with As American's prospective economic advantage in the name "Spudnuts" as applied to baked products. (Exhibit D, ¶ 17.)

116. Lastly, Grear intentionally and wrongfully interfered with the contractual relations between Patton and As American by recklessly if not knowingly misrepresenting that the scope of his trademark for the name "Spudnuts" included use of the name for baked-good products. (*See* Exhibit K.) Grear has also interfered with As American's current or potential clients by causing or allowing cease-and-desist letters to be sent to them threatening legal action against them if they use the name "Spudnuts" for the products that they buy from As American which are made according to the original recipes that As American purchased from Spudnut International, Inc.

117. Thus, As American is entitled to damages caused by the above parties' interferences as well as punitive damages for any willfulness if not maliciousness to be shown at trial.

### NINTH CAUSE OF ACTION

### Conversion of Proprietary Property against Patton, Markisich, or Both

118. As American incorporates by reference and reasserts the allegations contained in Paragraphs 1 through 117.

119. Through their marketing, distributing, advertising, offering for sale, and selling of the copies of As American's confidential recipes, Defendants have unlawfully converted As American's trade secrets to their own use and have profited from that use.

120. Defendants have illegally deprived As American of the income and benefits that As American would have otherwise received from the sale of its proprietary mixes and recipes.

121. As a direct and proximate result of the conversion and misappropriation of As American's proprietary property and work product by the Defendants, As American has been damaged in an amount to be shown at trial.

122. Because the conduct of Defendants, or any one of them, was and is willful, reckless, and in total disregard of the rights of As American, As American is entitled to punitive damages in an amount

to be shown at trial.

### TENTH CAUSE OF ACTION

#### *Unjust Enrichment against Patton, Markisich, or Both*

123. As American incorporates by reference the allegations contained in Paragraphs 1 through 122 above and reasserts the same.

124. Defendants have benefited from the wrongful marketing and sale of the copies of As American's recipes and mixes, benefits that belong to As American.

125. To allow Defendants to retain the benefits of their wrongful taking would be unjust and against the fundamental principles of justice, equity, and good conscience.

126. As American is entitled to judgment against Defendants for unjust enrichment in an amount to be shown at trial.

127. Because the conduct of the Defendants, or any of them, was and is willful, reckless, and in total disregard of the rights of As American, As American is entitled to punitive damages in an amount to be shown at trial.

### PRAYER FOR RELIEF

THEREFORE, As American prays for an order and judgment as follows:

1. An award of damages for breach of contract, breach of good faith and fair dealing, breach of fiduciary duty, conversion and misappropriation of trade secrets, unfair competition, unjust enrichment, and intentional interference with contract relations or prospective advantage in an amount to be shown at trial; for punitive damages; for costs of court; attorney fees (pursuant to contract and statute); and for such further relief as the Court deems just and equitable;

2. An order requiring Defendants, or any of them, to account for and pay to As American all of their profits relating to their infringements of As American's copyrights and trademarks and such further damages as the Court deems just and equitable;

3. An award to As American for special damages caused to its proprietary rights including its copyrights and trademarks;

4. An order based on the Court's determination of Grear's and Patton's limited rights in their respective trademarks as discussed above pursuant to 15 U.S.C. § 1119;

5. An award to As American, at its election, for either the profits of Defendants (or of any one of them) as provided in 17 U.S.C. § 504(d) or statutory damages as provided by 17 U.S.C. § 504(c);

6. An award of reasonable attorney fees where the above contracts or statutes allow; and

7. Such further relief as the Court deems just and equitable.


**JURY DEMAND**

As American demands a jury trial of all factual issues triable to a jury as a matter of right.


Submitted _13 Dec_ ~~NOVEMBER~~ 2010


Timothy Clark Dudley
Attorney for As American As Doughnuts, Inc.


*Verified Complaint*
Page **22** of **22**

Plaintiff's address:
As American As Doughnuts, Inc.
A Utah corporation with a p.o.b. at
2001 Warm Springs Road
Salt Lake City, UT 84116

## VERIFICATION

I, Douglas E. Bagley, am a Principal of As American As Doughnuts, Inc. in the above-

entitled action. I have read the foregoing and know the contents thereof. The same is true of my

own knowledge, except as to those matters which are therein alleged on information and belief,

and as to those matters, I believe it to be true.

Pursuant to Utah Code Ann. 46-5-101, I declare under criminal penalty of the State of

Utah that the foregoing is true and correct.

Dated:

Douglas E. Bagley
for As American As Doughnuts, Inc., Plaintiff